SLIP OPINION  Cite as 2015 Ark. App. 343

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–14–853

| | | |
|---|---|---|
| MARY WALLIS | | **Opinion Delivered** MAY 27, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. CV-2013-1211-5] |
| KATHERINE KELLER | | HONORABLE XOLLIE DUNCAN, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

On February 20, 2013, motorist Katherine Keller rear-ended the vehicle driven by Mary Wallis in stop-and-go traffic on I-49 (formerly I-540). Keller eventually admitted fault. Wallis filed a claim against Keller seeking damages for pain and suffering and mental anguish. The jury found in favor of Wallis, but returned a verdict of zero damages. Wallis filed a motion for a new trial based on Arkansas Rule of Civil Procedure 59(a)(5) and (6), which was deemed denied. Wallis appeals, asserting that zero damages was not a verdict the jury could deliver. We affirm.

### I. *Facts*

At trial, Keller's attorney stated in opening statements that, "it's not, folks, that they are not entitled to anything. It's not that she's not entitled to anything, it's that they've got to prove that they're entitled to $25,000 at minimum or $100,000 at maximum."

SLIP OPINION

Wallis's family members testified about her reduced capacity since the accident. Wallis's son, Todd, testified that she was no longer able to attend his three children's numerous sporting events, which she had done regularly before the accident. He testified that she was a very active, busy person before the accident and that the accident "really slowed her down. It's kind of made it where she's constantly in back pain. Not constantly, but it's regular. Migraines from it. It slowed her down."

Wallis's youngest son, Trent, also testified that his mother no longer participated in bowling, playing catch with him, gardening, cleaning, cooking, and playing with their dogs. He also testified that Wallis had back surgery in 2002.

Wallis's husband, Richard, testified about her inability to maintain the level of activity she enjoyed prior to the accident and that he and the children and grandchildren had begun helping out with the housework. He described his wife's physical state immediately after the accident, testifying that she "couldn't hardly get up. I mean she's real tender. She basically just laid down." He testified that basically nothing relieved her pain, that she just had good days and bad days, and was not "the same dynamo she was before[.]" On cross-examination, Richard stated that she went back to work a week after the accident. He testified that his wife has worked full-time and has at times taken a second job while he was being treated for colon cancer. He also stated that, apart from the initial visit to the doctor a week after the accident, Wallis had seen a physician for back pain only once about a year later.

Wallis testified that immediately after the accident, she was able to get up and walk around and did not realize the extent of her injuries. Within half an hour, she was having back

spasms and allowed the EMT to place her in a collar and on a back board and transport her to the hospital via ambulance. After she was x-rayed, she was instructed to take a week off of work, and she was given pain medications. Wallis went to her regular physician for a follow-up visit a week after the accident, and he prescribed anti–inflammatory medicine, Naproxen, and adjusted her pain medications. He diagnosed her with lumbar strain due to a motor-vehicle accident. Wallis also testified that she underwent back surgery in 2002 to address ruptured disks in the L4/L5 region of her spine. She stated that the surgery, combined with physical therapy, was successful and that after the surgery (but prior to the accident) she had felt mild back pain from time to time that could be managed with Tylenol or Motrin, but that it "wasn't enough to put me down to where I couldn't do anything." Wallis described her job history, and said that she had worked full-time since the accident, occasionally having two jobs and other times only having one job.

Wallis testified how her life had changed since the accident. She stated that she no longer cleaned the house as before, and that "I just don't live my life like I have prior to the wreck." She testified that nothing relieved the pain and that sitting, standing, walking, lying down, and basically all daily activities aggravated the sharp pain in her back.

Keller also testified about how the accident happened and that Wallis seemed okay immediately afterward and was walking around.

In closing arguments the defense argued that "The only thing they are asking for is pain and suffering. Have they met that burden of proof? Is that the kind of proof you would want if you had a friend or a loved one sitting where Kate is today? I submit to you that it is not."

Then, the defense went on to say, "Now I think the case is worth some money . . . I'd start at the $1000 range, or the $3000 range" and asked the jury to "return a verdict that's reasonable[.]"

The jury returned a verdict finding in favor of Wallis, but awarded no damages for pain and suffering and mental anguish. Wallis filed a motion seeking a new trial, arguing that the jury was in error in awarding nothing. The circuit court did not act on the motion within thirty days, and it was deemed denied. This appeal follows.

## II. *Standard of Review*

When the primary issue is the alleged inadequacy of the damage award, we will affirm the denial of a motion for a new trial absent a clear and manifest abuse of discretion. *Fritz v. Baptist Mem'l Health Care Corp.*, 92 Ark. App. 181, 184, 211 S.W.3d 593, 595 (2005). An important consideration is whether a fair-minded jury could have reasonably fixed the award at the challenged amount. *Depew v. Jackson*, 330 Ark. 733, 740, 957 S.W.2d 177, 181 (1997). When a motion for a new trial is made on the ground that the verdict is clearly contrary to the preponderance of the evidence, we will likewise affirm the denial of the motion if the jury's verdict is supported by substantial evidence. *Barringer v. Hall*, 89 Ark. App. 293, 300, 202 S.W.3d 568, 573 (2005).

The jury is the sole judge of the credibility of the witnesses and of the weight and value of their evidence. *Kempner v. Schulte*, 318 Ark. 433, 436, 885 S.W.2d 892, 893 (1994). It may believe or disbelieve the testimony of any one or all of the witnesses, though such evidence is uncontradicted and unimpeached. *Id.*

SLIP OPINION

### III. *Arkansas Code Annotated § 16-64-119(b)*

Keller argues that Wallis waived any objection to the jury's verdict under Arkansas Code Annotated section 16-64-119 when she failed to poll the jury before they were dismissed. Declining to poll the jury does not bar an appeal under Rule 59. Keller's argument concerning the statute is misapplied under the present circumstances.

Arkansas Code Annotated section 16-64-119(b) sets forth that after the verdict has been read by the foreman, "either party may require the jury to be polled, which is done by the clerk or court asking each juror if it is his or her verdict. If any one answers in the negative, the jury must again be sent out for further deliberation." Subsection (d)(2) dictates that when there is no disagreement and neither party polls the jury, "the verdict is complete and the jury discharged from the case." Before the discharge of the jury, the parties have a right to have jurors polled and to call for corrective measures to cure any apparent confusion. *Smith v. Perkins*, 246 Ark. 427, 429, 439 S.W.2d 275, 276 (1969). The purpose of the statute is to isolate any irregularity or inconsistency in the verdict, such as the jury's misunderstanding of jury instructions, for example. *See Spears v. Mills*, 347 Ark. 932, 69 S.W.3d 407 (2002). We have not held that a party's claim under Rule 59(a)(5) or (6) can arise only under circumstances involving jury confusion or an inconsistency in the verdict, creating a situation in which it would be helpful to poll the jury. The necessity of polling the jury, or lack thereof, is not at issue here. We find no merit to this argument on appeal and do not discuss it further.

### IV. *Rule 59(a)(5) and (6)*

We now turn to Wallis's assertion that the zero verdict awarded by the jury was in error.

Wallis divides her argument into two points: (1) error exists in the amount of recovery; and (2) the award is clearly against the preponderance of the evidence. Because the two points are so closely related, we shall address them together.

Wallis contends that Keller's attorney's statements in opening and closing argument that the case was worth "some money" amounted to a concession, and therefore the jury was obliged to award damages for pain and suffering. Therefore, she argues, under Rule 59, she should have been granted a new trial because the jury's verdict was clearly contrary to the preponderance of the evidence, and the award was inadequate.

Rule 59(a)(5) of the Arkansas Rules of Civil Procedure provides that a new trial may be granted on the ground of error in the assessment of the amount of the recovery, whether too large or too small. Subsection (6) of Rule 59(a) allows for a new trial when "the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to the law."

Wallis cites *Machost v. Simkins*, 86 Ark. App. 47, 158 S.W.3d 726 (2004), in support of her assertion that the zero award was in error. In *Machost*, the appellant appealed from the denial of her motion for new trial after a jury returned a verdict in her favor for $2000 in her negligence action against appellee Simkins. As in our case, Simkins's liability was not in dispute. Simkins's attorney conceded in both opening and closing arguments to the jury that Machost's medical bills were both reasonable and necessary. However, in *Machost*, the jury was instructed to assess the medical expenses as well as pain and suffering, and mental anguish. There was testimony from Machost and her physician about the medical costs incurred:

> She [Machost] explained that her medical bills amounted to about $10,000, including approximately $3000 from the emergency room, and approximately $5000 for physical

therapy. At the end of her statement, she requested an award for medical expenses and for pain and suffering.

*Id*. at 50, 158 S.W.3d at 727.

Unlike *Machost*, in the present case, medical expenses were not at issue or requested by Wallis. She requested the jury consider only her pain and suffering, and mental anguish in assessing damages. The testimony heard by the jury concerning Wallis's damages was anecdotal evidence from herself and her family. While such evidence is permitted and common in such proceedings, it does not establish a fact beyond a jury's determination. As stated above, the jury is the sole judge of the credibility of the witnesses and of the weight and value of the evidence. *Kempner, supra*. The jury could have reasonably decided that the testimony from only family members was not reliable or persuasive as to the damages requested.

Furthermore, our supreme court has held that the admission of fault by a defendant does not automatically entitle the plaintiff to recover damages. *James v. Bill C. Harris Constr. Co., Inc.*, 297 Ark. 435, 440, 763 S.W.2d 640, 642(1989). In *Barnes v. Everett*, 351 Ark. 479, 491, 95 S.W.3d 740, 747 (2003), the supreme court declined to accept statements that the appellee had made during closing arguments in appellant's earlier case as proof of the value of appellant's claim. Barnes had alleged that her attorney committed malpractice by advising her to settle a claim. To prove damages, Barnes attempted to use statements her attorney made in closing argument during the original trial as evidence of what her claim was worth. Barnes characterized these statements as admissions and argued that her attorney's statements were substantive evidence of the value of her claim. The supreme court held that the statements were not admissions, stating, "we agree with the circuit court that such statements made on behalf

of a client and under the duty to zealously represent the client may not be characterized as personal admission on the attorney's part. Indeed, statements made by attorneys during opening statement and closing argument are not even considered as evidence at all." *Id*. at 490, 95 S.W.3d at 749.

On the other hand, in *Yeager v. Roberts*, 288 Ark. 156, 157, 702 S.W.2d 793, 794 (1986), our supreme court held that the appellant's lawyer had conceded liability in his closing argument, and therefore it was not an abuse of discretion to grant the new trial where the jury found in favor of appellant despite his admission of liability. During closing argument, appellant's attorney stated, "We will concede the accident was our fault." The jury, however, returned a verdict in favor of the appellant. The appellee moved for a new trial, and it was granted. There are two distinctions between *Yeager* and the present case. The first is that the jury in *Yeager* found appellant free from liability when appellant's attorney admitted liability. In the present case, the jury found in favor of Wallis, but awarded no damages. The second difference is that in *Yeager* our supreme court held only that the circuit court did not abuse its discretion in considering an attorney's statements made during closing arguments when it awarded a new trial to appellee. The case does not support Wallis's assertion that the circuit court should be *required* to grant a new trial based on the attorney's opening and closing statements that the case had some value. We place great value and trust on the duty and ability of juries to hear evidence, weigh that evidence, and determine if damages have been proved, and if so, to set those damages.

Based on the evidence, we believe the jury could reasonably fix Wallis's damages at zero,

and the verdict is supported by substantial evidence. Accordingly, we affirm the circuit court's

denial of Wallis's motion for a new trial.

Affirmed.

GRUBER and WHITEAKER, JJ., agree.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*; and
*Bailey & Oliver Law Firm*, by: *Frank H. Bailey, Sach D. Oliver*; and *T. Ryan Scott*, for appellant.

*Roy, Lambert, Lovelace, Bingham & Wood, LLP*, by: *Robert J. Lambert, Jr.* and *James H. Bingham*, for appellee.