Cite as 2024 Ark. App. 155

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-22-78

| | |
|---|---|
| VIVEK DICHOLKAR | Opinion Delivered February 28, 2024 |
| APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT |
| V. | [NO. 04CV-18-1879-6] |
| BLAKE MCMILLON | HONORABLE DOUG SCHRANTZ, |
| APPELLEE | JUDGE |
| | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Vivek Dicholkar appeals the order of the Benton County Circuit Court entering judgment on the jury's verdict and subsequent award of appellee Blake McMillon's attorney's fees and costs. Appellant asserts four issues on appeal: (1) the circuit court erred in denying his motion to reopen the record, (2) the circuit court erred in failing to grant a mistrial, (3) the circuit court erred in denying appellant's motion for new trial and to alter or amend, and (4) the circuit court erred in denying his motion to vacate and alter or amend its order denying appellant's motions to reopen the record and for new trial and to alter or amend. We affirm.

I. *Factual Background*

Appellant and appellee were involved in a motor-vehicle accident on July 1, 2015, wherein appellee admitted fault. Appellant began receiving treatment the day of the

accident, complaining of dull right wrist pain. He reported to the Mercy Clinic physician that the accident was at a slow speed, and his airbag did not deploy. Appellant was diagnosed with signs and symptoms of wrist bursitis. He continued with therapy until he moved to Atlanta.

Appellant began treatment with Dr. Jason Schneider in Atlanta on December 14, 2015, reporting continued pain and difficulty with his right wrist. Dr. Schneider ordered an MRI and arthrogram of appellant's right wrist, which found no evidence of synovitis or tears. Dr. Schneider referred appellant to physical therapy. On March 17, 2016, Dr. Schneider noted that appellant was doing much better and had no discomfort in his wrist. Appellant reported that he had some discomfort only with rotation. In releasing appellant from medical care, Dr. Schneider noted that appellant would continue to work on his motion, modify his activities, and work on his function at home. Dr. Schneider recommended a cortisone injection if appellant's symptoms failed to improve. Appellant received no medical treatment for his right wrist pain for over two years.

On May 25, 2018, appellant sought treatment with Dr. Robert Howell for his right wrist pain. Appellant reported that he had experienced pain in his wrist for the past two and a half years after a motor-vehicle accident. Appellant complained of pain and fatigue with typing. Dr. Howell diagnosed appellant with "[s]prain of the wrist, which seems to bother the patient intermittently, but not enough to change any of his activities." Dr. Howell recommended observation, anti-inflammatory medications, and for appellant to return as needed.

In April 2019, appellant sought treatment with Dr. Snehal Dalal for a second opinion and determination on whether surgery was necessary for his wrist. Appellant reported that he had been diagnosed in 2018 with a peripheral TFCC (triangular fibrocartilage complex) injury from a previous motor-vehicle accident. Dr. Dalal initially ordered physical therapy. On April 17, Dr. Dalal performed a nerve conduction study and an electromyogram (EMG) on appellant and found appellant's study to be normal. Dr. Dalal performed a steroid injection of appellant's right wrist on April 18, that gave appellant relief for only a few days.

Dr. Dalal recommended continuing physical therapy. Appellant's symptoms continued to worsen, and he saw Dr. Dalal to discuss the recommendation of surgery. Appellant initially scheduled the surgery with Dr. Dalal and then insisted on having another MRI of his right wrist first. Dr. Dalal recommended that appellant seek a second opinion due to the evolution of his symptoms and negative EMG and provided a list of physicians for appellant to contact.

Dr. Dalal noted that appellant wanted a surgeon to take care of his wrist and help him with his legal situation and link his right wrist pain to his motor-vehicle accident years ago. Dr. Dalal recommended that appellant seek treatment with his prior treating physician, Dr. Schneider. On November 12, appellant returned to Dr. Dalal, seeking a doctor to do an in-depth medical records review. Dr. Dalal indicated he discussed appellant's prior medical records with him concerning the specific wording of the notes. On December 11, appellant sent Dr. Dalal a fax requesting that Dr. Dalal correct or amend his medical records from the November 5 and November 12 visits.

Appellant returned to Dr. Schneider on December 5 for his persistent right wrist pain. Dr. Schneider recommended an arthroscopic evaluation and debridement due to appellant's "persistent right wrist pain despite failed conservative treatment." Dr. Schneider ordered physical-therapy treatment to resume for appellant on December 12 which continued until his surgery on August 4, 2020. Dr. Schneider's surgical report diagnosed appellant with right wrist capsulitis and synovitis. Dr. Schneider ordered postsurgery physical therapy for appellant, and he continued to improve slowly postsurgery with physical therapy through March 2021.

Appellant's jury trial took place on May 4 and 5, 2021. At the time of trial, appellant was seeking damages not to exceed $350,000, with $187,117.97 representing medical expenses, plus pain and suffering. The record reflects that appellant's charges for physical therapy made up the vast majority of his medical expenses totaling $155,553. At the beginning of the trial, the circuit court specifically questioned the jurors to ensure no one had any difficulties hearing or seeing counsel or the court.

Appellant testified that prior to and following the accident in question, he worked as a program director with a technology company, which involved working on computers five to six hours a day. He reported that his pain had gone up and down for the last six years, depending on the activities he performed each day, and that he could not do the activities he used to do before July 2015. Appellant testified that all typical household activities increased the pain in his right wrist but admitted he still performed those activities. He stated that he had to work longer hours to accommodate the breaks he was forced to take

4

during the day due to his wrist pain, leaving him less time to spend with his children. Appellant admitted that he did not seek medical treatment for over two years once he was released from Dr. Schneider's care on March 17, 2016; however, he indicated that he followed his home-treatment plan and continued to take the recommended over-the-counter pain medications. Appellant testified that he chose to seek treatment in 2018 because his pain was not completely resolved. He admitted the pain was manageable, but his wrist was not fully healed.

The videotaped depositions of Drs. Schneider, Howell, and Dalal, along with appellant's physical therapist, Alison Bishop, were presented at trial. Dr. Schneider testified that he reviewed appellant's medical records from Drs. Howell, Dalal, and Millan Patel[1] before coming up with a new treatment plan in December 2019. Dr. Schneider recommended performing a diagnostic arthroscopy on appellant's wrist to ensure that they were not missing anything that could be causing his pain. When Dr. Schneider performed the arthroscopy, he noted appellant had significant inflammation of the lining of the joint, or synovitis. Dr. Schneider did not see any major structural abnormalities of the ligaments, bone, or joints. Dr. Schneider removed the inflamed tissue and cleaned up the capsule. Dr. Schneider noted that appellant's symptoms did not involve severe pain but instead just a nagging discomfort. He testified that all appellant's referrals for physical therapy were

---

[1]Dr. Patel is one of Dr. Schneider's partners who saw appellant in 2019.

necessary and reasonable. Dr. Schneider opined that appellant's right wrist pain was caused by his 2015 motor-vehicle accident.

On cross-examination, Dr. Schneider testified that in 2015, appellant did not complain of numbness or tingling in his fingers. He confirmed that appellant's 2016 MRI and arthrogram did not show evidence of synovitis. Dr. Schneider agreed that in March 2016, appellant's wrist was much better, and appellant was asymptomatic. He also agreed that in 2015 and 2016, appellant was treated for a wrist sprain. Dr. Schneider testified that working on a computer and typing every day in a poor ergonomic position is a known cause of hand and wrist discomfort.

Alison Bishop, appellant's physical therapist, testified on behalf of appellant concerning her ongoing treatment of his right wrist pain. She confirmed that her goal was to help appellant improve his wrist strength and range of motion and reduce his wrist pain and swelling. Ms. Bishop testified that all the physical therapy she provided to appellant was within a reasonable degree of medical certainty and was both reasonable and necessary. Ms. Bishop admitted that although she had been providing physical therapy for appellant for two years, his condition remained unchanged. She agreed that appellant's working on a computer eight hours a day exacerbated his symptoms. Ms. Bishop agreed that her notes in November 2019 and February 2020 reflect that appellant had "[m]inimal progression toward achieving established functional goals."

Dr. Howell testified that he first saw appellant in May 2018 wherein appellant complained of pain in his right wrist on the ulnar/pinky side. Dr. Howell stated that

6

appellant did not complain of numbness or limitation of motion in his wrist but reported that when he typed, his fingers got tired. Dr. Howell did not find any evidence of tenosynovitis or instability on the small finger side of appellant's wrist. Dr. Howell stated that appellant's x-rays, arthrogram, and MRI were normal. He performed "provocative testing" of the ulnar tendon and noted appellant had no pain. He recommended that appellant continue on anti-inflammatory medicines and return as needed. Dr. Howell testified that he examined appellant three times, and he diagnosed that appellant's wrist was normal at each exam.

Dr. Howell stated that he recommended against steroid injections because he did not know where to inject appellant since there was not a spot of consistent pain. Dr. Howell testified that he notified appellant in August 2018 that, in his opinion, appellant did not have and would not have a surgical problem with his wrist. In January 2019, Dr. Howell noted that appellant's reports of severe pain seemed "grossly exaggerated from his otherwise perfectly benign demeanor." He noted that appellant appeared to be perfectly functional, with excellent range of motion of his wrist, and he discharged appellant with a home exercise program. Dr. Howell agreed that because appellant's right wrist pain was intermittent, it was possible that appellant's wrist pain two and a half years after the accident could have causes other than the accident. Dr. Howell confirmed that appellant did not appear to have suffered from continuous pain from the date of the accident until Dr. Howell began treating him.

Dr. Dalal testified that he saw appellant for a second opinion for appellant's right wrist pain. He noted that appellant reported tenderness on the ulnar side of the wrist with some numbness and tingling along his little finger. Dr. Dalal stated that there are only two things that could cause the weakness and numbness in the little finger—a compressed nerve root in the neck or a compression of the cubital tunnel or ulnar nerve in the elbow. Dr. Dalal reviewed appellant's previous MRI and concluded that it showed a subsheath tear but noted no other injuries. Dr. Dalal conducted an EMG on appellant's right upper extremity to determine whether there was any compression of the nerve in the elbow, and appellant's results were normal. He confirmed that appellant reported that he was still working regular duty.

Dr. Dalal recommended and performed a cortisone shot to address appellant's wrist pain. Appellant reported that the cortisone shot helped for a few days before the pain returned, so Dr. Dalal ordered dedicated hand physical therapy. Dr. Dalal testified that a patient can have normal function but still have tendonitis or some dyskinetic function. Dr. Dalal stated that there were no objective findings in his exams of appellant's wrist, so he was treating appellant's subjective complaints. He noted that appellant's pain had waxed and waned from tolerable to intolerable over the four years since his accident, so Dr. Dalal recommended that appellant restart icing and anti-inflammatory regimens. After discussions with appellant, Dr. Dalal recommended surgical release of the sheath to relieve pressure off the ulnar tendon and possible repair of the subsheath if a tear existed. Dr. Dalal also recommended performing an ulnar nerve decompression, which is an incision on the inside

8

of the elbow to relieve pressure on the nerve that could be causing appellant's numbness and tingling pain that was radiating to his forearm.

After those discussions, appellant requested another MRI of his wrist, which was performed in August 2019. The MRI continued to show a chronic TFCC tear, but Dr. Dalal did not believe the tear was related to appellant's wrist pain. Appellant had scheduled the recommended surgery with Dr. Dalal but canceled the surgery and sought further discussions regarding the surgery. Appellant complained of increased global wrist pain and pain in the opposite side of his wrist. Appellant had taken the MRI ordered by Dr. Dalal to another physician to be compared against the new MRI conducted by the other physician.

Dr. Dalal testified that appellant expressed concerns about linking his wrist pain to the 2015 car wreck and asked Dr. Dalal to go over his records to establish causation. Dr. Dalal confirmed that appellant felt that all the symptoms on his right upper extremity were directly related to the 2015 motor-vehicle accident. Dr. Dalal testified that during appellant's last visit, appellant wanted Dr. Dalal to change the specific wording of his clinic notes. Dr. Dalal stated that he was not confident at that point that any surgical intervention would provide any predictable result for appellant. He also testified that that all the findings related to appellant's wrist pain appeared to be degenerative in nature, not a traumatic injury. Dr. Dalal stated that the source of appellant's pain "started to get more muddy" as time progressed.

In closing argument, appellant's counsel recognized that he and appellant had not realized that appellant's accent could make it difficult for the jury and the court reporter to

9

understand him. Appellant's counsel stated: "I don't think I fully understood how much of a problem it could be for y'all, and so ~ for the court reporter. And so, I want to just ask you to please consider the testimony you did understand. Don't discount it because of that factor. This is his day." Appellant's counsel asked the jury not to hold any difficulties understanding appellant's accent against his client. The jury unanimously awarded appellant damages in the amount of $5,000.

On May 11, 2021, appellee filed a motion for costs pursuant to Ark. R. Civ. P. 68, noting that on November 5, 2019, an offer of judgment was served upon appellant offering to settle his claims for $46,069. Appellee sought costs incurred following the date of the offer of judgment in the amount of $11,474.75. Appellant filed his objection to appellee's motion for costs, arguing that the costs appellee was seeking were not reasonable litigation expenses, and appellee's offer of judgment was not a bona fide or good faith offer.

On June 8, new counsel entered an appearance on appellant's behalf and filed a motion to reopen the record to obtain the audiotaped transcripts of appellant's trial testimony, claiming appellant's testimony was unintelligible for the jury because of language differences. Counsel claimed that the tapes would illustrate that without an interpreter, the jury was deprived of appellant's testimony, and appellant was denied due process. Appellant argued that the circuit court should have stopped the trial to provide him with an interpreter. He stated that he did not object at the time because the damage had already been done in the testimony, and it would have been impossible to immediately obtain an interpreter. Appellee objected to appellant's motion to reopen the record.

On June 11, the circuit court filed its judgment offsetting appellant's judgment against the costs awarded to appellee and ordered that appellee have judgment against appellant for $6,474.75. Appellant filed a timely motion for new trial and to alter or amend pursuant to Ark. R. Civ. P. 59 and 52. He argued that he was entitled to a new trial on three grounds. First, appellant claimed there was an irregularity of procedure and also an accident or surprise as a result of his suggestion that the trial was disrupted due to language problems. Appellant suggested that the multiple instances in which his responses were unintelligible or he was instructed to slow down would have comprised more than one minute of testimony. He alleged that it was undisputable that his testimony was unintelligible and again argued that the circuit court had an obligation at that point in the trial to question whether an interpreter was necessary, and failure to do so denied appellant a fair trial.

Second, appellant argued that there was an error in the jury's assessment of the amount of recovery. He claimed that he unequivocally established the link between the accident and his need for six years of medical care, which resulted in over $182,000 in medical bills. Thus, the jury's verdict awarding him $5,000 was too low and contrary to the evidence presented at trial. He claimed that the jury failed to follow the jury instructions and consider the evidence of the nature, extent, and duration of his injury from the accident and the incapacitating effect the injury had on his daily activities.

Third, appellant argued that the circuit court should reverse, alter, or amend its decision granting appellee's offer of judgment on the grounds that the offer of judgment was unreasonable and not a bona fide offer. Appellant also opined that if the circuit court

11

granted his motion for new trial, appellee would no longer be the prevailing party. He claimed that he had no reasonable basis to accept appellee's offer of judgment in light of the amount of medical bills he had incurred at that time. Appellant claimed that the circuit court abused its discretion in approving the judgment because appellee's offer of judgment was unreasonable.

Appellee filed his response to appellant's motion for new trial, noting that appellant failed to offer any proof that the jury did not understand him well enough to ascertain the damages he was seeking. Appellee noted that appellant failed to either object or raise the issue with the circuit court concerning the possibility that his testimony was not understandable by the jury. Appellee again asserted that there was no error in the jury's award of damages or in the circuit court's award of costs. In his reply in support of his motion for new trial and to alter or amend, appellant further argued that appellee could not properly assert that a cause other than the car accident resulted in his injury because the circuit court did not give an instruction to the jury on independent, intervening cause. Appellant then filed a timely notice of appeal and designation of record.

The circuit court filed its letter order on August 9 denying appellant's motion for new trial and denying appellant's motion to reopen the record. The circuit court noted that appellant's motion for new trial was deemed denied at the expiration of thirty days and that it did not intend to grant a new trial because it was not warranted. The circuit court then explained its reasoning for not granting a new trial or to alter or amend. The circuit court confirmed that appellant's physicians who testified at trial were understood by the jury.

12

Further, the circuit court stated that appellant's testimony was generally understood by the jury, and no member of the jury panel communicated any difficulty in understanding appellant. The circuit court also noted that appellant's counsel did not raise any issues during the trial regarding an inability to understand appellant's testimony. The circuit court found that it was not practical to reopen the record to attempt to summon the return of the jury for further proceedings.

Appellant moved to vacate or to alter or amend the circuit court's order denying his motions to reopen the record, for a new trial and alter or amend judgment. Appellant argued that the circuit court's factual findings were improper because the circuit court no longer had jurisdiction to rule on the motion for new trial. Appellant contended that he objected to the factual findings contained in the August 10 order, but he was not given the opportunity to object to the precedent before it was filed. Appellant claimed that the circuit court erred in its ruling on his motion to reopen the record because it was combined with the court's improper ruling upon his motion for new trial.

Appellee responded to appellant's motion to reopen the record, arguing that the motion was implicitly denied by the circuit court's entry of judgment following the filing of appellant's motion. The circuit court did not rule on appellant's motion to vacate. Appellant filed a second amended notice of appeal. Before this court, appellant filed a motion to remand to settle the record and petition for certiorari to complete the record, raising a purported objection that was not raised before the circuit court. We denied appellant's motions to remand to settle the record and to reconsider.

II. *Issues on Appeal*

A. Motion to Reopen the Record

Appellant asserts four issues on appeal. First, appellant contends the circuit court abused its discretion in denying his motion to reopen the record. Appellant asked the circuit court to reopen the record to include in the record the court reporter's audio tapes of the trial in order to illustrate the language difficulties appellant experienced in offering his trial testimony. Appellant claimed that the defendant would not be prejudiced by reopening the record because the judgment had not yet been filed in the case.

Whether to reopen the record was within the circuit court's discretion in light of all the relevant circumstances.[2] Evidence should be reopened when to do so would serve the interests of justice and cause no undue disruption of the proceedings or unfairness to the party not seeking to have it reopened.[3] The general rule is that we will not reverse the circuit court's decision to admit or refuse evidence in the absence of an abuse of that discretion and a showing of prejudice.[4] A court should not reopen a case except for good reason and on proper showing. The exigencies of each particular case have much weight in controlling the discretion of the court.[5] An abuse of discretion is a high threshold that does not simply

---

[2]*Aceva Techs., LLC v. Tyson Foods, Inc.*, 2013 Ark. App. 495, 429 S.W.3d 355.

[3]*Id.*

[4]*Id.*

[5]*Id.*

14

require error in the circuit court's decision, but requires that the court act improvidently, thoughtlessly, or without due consideration.[6]

The jury rendered its verdict on May 5, 2021, awarding appellant $5,000 in damages. On May 11, appellee filed his motion for costs pursuant to Ark. R. Civ. P. 68. On May 19, appellant filed his objection to appellee's motion for costs. It is worth noting that no mention was made in appellant's objection to appellee's motion for costs that the record was incomplete or that language difficulties may have affected the outcome of the trial. Appellee filed his reply in support of his motion for costs on May 20. On June 4, the circuit court filed its letter opinion granting appellee's motion for costs in the amount of $11,475.75. On June 8, appellant filed his motion to reopen the record.

Each of the cases relied on by appellant to support his claim that the circuit court erred in denying his motion to reopen involve reopening a case before a verdict has been entered. However, appellant waited more than thirty days after the jury's verdict was rendered and four days after the circuit court's letter opinion granting costs to appellee to request reopening of the record. Appellant also failed to establish that the transcript of his trial testimony would be insufficient to provide an adequate record for appellate review.

Appellant's repeated claims that his testimony was "unintelligible" or "hopelessly twisted" due to a language barrier are not borne out by the record. Appellant highlighted each instance when his trial testimony was noted by the court reporter as unintelligible or

---

[6]*Ford Motor Co. v. Washington*, 2013 Ark. 510, at 9, 431 S.W.3d 210, 216.

when he was instructed to slow down. In most instances where appellant's testimony was not understood by the court reporter, he was given the opportunity by the court reporter, the circuit court, or his counsel to restate the information to ensure the jury could understand. In other instances, appellant's testimony was fully discernable in light of the entire response he gave. The instances in which appellant's unintelligible response was not clarified were not relevant to appellant's injuries or subsequent medical care.

Furthermore, the sole issue at trial was the assessment of damages for appellant's injuries incurred as a result of the motor-vehicle accident with appellee. Four of appellant's medical providers offered trial testimony concerning appellant's injuries and course of care. As set forth above, each of the medical providers testified in detail about his or her diagnosis of appellant's injuries and the medical care rendered. Appellant did not explain why tapes of his testimony were necessary in light of all the witnesses who testified concerning his injuries. Accordingly, we conclude that the circuit court did not act improvidently, thoughtlessly, or without due consideration in denying appellant's motion to reopen the record. Furthermore, because a motion to reopen the record is not one that is deemed denied after thirty days, the circuit court possessed jurisdiction to enter its August 10 order denying appellant's motion to reopen the record.

### B. Mistrial

Appellant claims the circuit court erred in failing to either stop the trial and appoint an interpreter or sua sponte declare a mistrial following his trial testimony because his

16

testimony "would have been gibberish to the jury." Appellant asserts that he was denied due process and a fair trial because of the jury's purported inability to understand his testimony.

A mistrial is a drastic remedy that should be used only when there has been an error so prejudicial that justice cannot be served by continuing the trial or when fundamental fairness of the trial itself has been manifestly affected.[7] The circuit court has wide discretion in granting or denying a motion for mistrial, and absent an abuse of that discretion, the decision will not be disturbed on appeal.[8] Additionally, objections and motions for mistrial must be made at the first opportunity. Likewise, to preserve a point for appeal, a proper objection must be asserted at the first opportunity.[9] This court has stated that an issue must be presented to the circuit court at the earliest opportunity in order to preserve it for appeal, and even a constitutional issue must be raised at trial in order to preserve it for appeal.[10] Stated another way, a party may not wait until the outcome of a case to bring an error to the circuit court's attention.[11]

---

[7]*Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998).

[8]*Id.*

[9]*Id.*

[10]*LaFont v. Mooney Mixon*, 2010 Ark. 450, 374 S.W.3d 668.

[11]*Id.*

Arkansas Code Annotated § 16-10-1104(c)[12] states that an attorney, a clerk of court, employee or officer of a law enforcement agency, or a party to or a witness in a court proceeding shall notify the court as soon as the need for an interpreter is identified. Additionally, when an interpreter is requested or when the court determines that a party to, or a witness in, a court proceeding has limited English proficiency, a qualified interpreter shall be appointed under procedures adopted by the supreme court.[13]

During closing argument, appellant's trial counsel apologized that he did not realize appellant's accent could have been a problem in understanding appellant's testimony. Counsel asked the jurors to consider the testimony they could understand and to decide the case fairly. Appellant concedes that his trial counsel did not, at any point during the proceedings, request an interpreter, move for a mistrial, or request any findings from the circuit court regarding whether appellant had limited English proficiency. As noted by appellee, the testimony of appellant's medical-care providers at trial was both understandable and extensive. Additionally, appellant's counsel did not present any motions or objections during the trial regarding an inability to understand appellant's testimony. Instead, appellant waited until the outcome of the litigation and the award of costs to appellee to raise any objection based on the unintelligibility of his own testimony. Accordingly, we hold

[12](Supp. 2023).

[13]Ark. Code Ann. § 16-10-1104(b).

that the circuit court did not act improvidently, thoughtlessly, or without due consideration in not acting sua sponte to appoint an interpreter or declare a mistrial.

### C. Motion for New Trial and to Alter or Amend

Appellant asserts that the circuit court committed multiple errors in failing to grant his motion for new trial or to alter or amend. Appellant first asserts that the circuit court erred in entering its August 10, 2021 order denying his motion for new trial and to alter or amend because the circuit court had lost jurisdiction to enter such order since the motion was deemed denied on July 25. Second, appellant again argues that the circuit court should have granted a new trial or altered or amended the judgment on the basis of his need for an interpreter, which was addressed above. Third, appellant claims the jury erred in the assessment of damages because the verdict was grossly inadequate. Fourth, appellant contends there was no proof of any other cause of his injury other than the motor-vehicle accident. Fifth, appellant asserts that the circuit court erred in the award and assessment of costs against him.

Appellant asserted below Ark. R. Civ. P. 52 as a basis for his motion to alter or amend. Rule 52(b), by its terms, applies to trials where the circuit court has made findings of fact, and the movant requests that the circuit court amend them. The trials contemplated are bench trials, which is made clear in both subsections (a) and (b) of Rule 52.[14] Rule 52 is

---

[14]*Routh Wrecker Serv., Inc. v. Washington*, 335 Ark. 232, 980 S.W.2d 240 (1998).

19

inapplicable to jury trials and, as such, cannot serve as the basis for appellant's motion to alter or amend.

### 1. *Validity of circuit court's order denying motion for new trial*

Appellant contends that the circuit court erred in entering its August 10, 2021 order denying his motion for new trial and to alter or amend because the circuit court had lost jurisdiction to enter the order since the motion was deemed denied on July 25. In interpreting Ark. R. Civ. P. 59(b), the Arkansas Supreme Court has consistently held that a circuit court loses jurisdiction to act on a Rule 59 motion thirty days after the motion is filed.[15] Thus, the circuit court's order is without effect because the circuit court failed to act on appellant's motion within the thirty-day period following its filing. The motion was deemed denied on the thirty-first day, and the circuit court did not have jurisdiction to act beyond that date.[16] The circuit court apparently recognized that the motion for new trial had been deemed denied yet made findings of fact supporting its denial of the motion. Pursuant to Ark. R. Civ. P. 59(b), the circuit court did not have jurisdiction to make findings of fact or rule on appellant's motion for new trial after July 25. As such, the circuit court's August 10 order denying appellant's motion for new trial and to alter or amend was a nullity. The August 10 order pertaining solely to appellant's motion to reopen remains valid.

### 2. *Error in the assessment of damages*

---

[15]*Cincinnati Ins. Co. v. Johnson*, 367 Ark. 468, 470, 241 S.W.3d 264, 266 (2006).

[16]*See id.*

Appellant contends that the circuit court abused its discretion in denying his motion for new trial and to alter or amend because the evidence presented could not support the jury's verdict. Appellant claims that the verdict for damages was too low and incapable of rational explanation. He argues that the jury was instructed that it was required to consider the nature, extent, and duration of appellant's injury, which should include future treatment, pain, and suffering. He further claims that the evidence presented at trial did not show any other potential cause for his injury. Appellant contends that the jury's verdict was grossly inadequate in light of the voluminous medical records and bills provided.

Arkansas Rule of Civil Procedure 59(a)(5) provides that error in the assessment of recovery, whether too large or too small, is a proper basis for granting a new trial.[17] In reviewing the adequacy of a jury's award, this court will sustain the circuit court's denial of the motion for new trial unless there is a clear abuse of discretion.[18] An important consideration in this analysis is whether a fair-minded jury might reasonably have fixed the award at the amount advocated by the appellant.[19] The jury may properly assess witness credibility, and there is no strict mathematical formula to be applied in personal-injury

---

[17]*Blake v. Shellstrom*, 2012 Ark. 428, 424 S.W.3d 830.

[18]*Id.*

[19]*Id.*

21

cases.[20]  Furthermore, we have frequently held that when it is impossible to know the basis for the jury's verdict, we will not question or theorize about the jury's findings.[21]

The jury is the sole judge of the credibility of the witnesses and of the weight and value of their evidence.[22]  It may believe or disbelieve the testimony of any one or all the witnesses, though such evidence is uncontradicted and unimpeached.[23]  Furthermore, our supreme court has held that the admission of fault by a defendant does not automatically entitle the plaintiff to recover damages.[24]

Similarly, in reviewing the denial of a motion for judgment notwithstanding the verdict, we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law.[25]  Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other.[26]  It is not our place to try issues of fact; rather, we simply review the record for substantial evidence to support the jury's verdict.[27]  In determining whether there is

---

[20]*Id.*

[21]*Id.*

[22]*Wallis v. Keller*, 2015 Ark. App. 343, 464 S.W.3d 128.
[23]*Id.*

[24]*Id.*

[25]*ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 276 S.W.3d 244 (2008).

[26]*Id.*

[27]*Id.*

substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered.[28]

The jury heard testimony that appellant received medical care for the injury to his right wrist following the accident from July 2015 until March 2016, when he was released from care by Dr. Schneider. The jury was presented with all of appellant's medical bills, which reflect that his medical bills through March 2016 totaled $5,059.83. The jury heard the testimony that appellant then waited over two years before again seeking treatment for his right wrist pain.

Dr. Schneider confirmed that appellant's 2015 MRI and arthrogram of his right wrist showed no evidence of synovitis. Dr. Schneider agreed that in 2015 and 2016, appellant suffered a sprain of his right wrist. He further confirmed that appellant's continued symptoms could have been related to his work, typing on a computer for five to six hours each day. Ms. Bishop confirmed that sitting at a computer keyboard exacerbates appellant's symptoms. Drs. Howell and Dalal further testified about the uncertainty of appellant's right wrist pain. Specifically, Dr. Dalal testified that near the end of his treatment, appellant was seeking assistance in linking his wrist issues to his car accident. Dr. Dalal also stated that during appellant's last visit, he wanted Dr. Dalal to change the specific wording of his clinic notes. Dr. Dalal testified that it appeared to him that all the findings related to appellant's wrist pain were degenerative in nature and not a traumatic injury. Dr. Dalal confirmed that

---

[28]*Id.*

23

the source of appellant's pain "started to get more muddy" as time progressed. We hold that the jury was presented with substantial evidence to suggest that appellant's medical treatment and bills beginning in 2018 were unrelated to his 2015 motor-vehicle accident with appellee. As such, the circuit court did not act improvidently, thoughtlessly, or without due consideration in refusing to grant appellant's motion for new trial.

### 3. *Awarding costs to appellee pursuant to Ark. R. Civ. P. 68*

Appellant argues that the circuit court erred in awarding costs to appellee pursuant to Ark. R. Civ. P. 68. He argues that appellee's offer of $46,069 in November 2019 was not a bona fide offer because the later total of his medical bills exceeded $187,000. Appellant contends he had no reasonable basis to settle the litigation against appellee in November 2019 in light of the extent of appellant's medical bills at the time of the offer and appellant's continuing treatment for his right wrist pain. Appellant argues that the circuit court erred in concluding that appellee provided sufficient proof of the reasonableness of his costs. Appellant further claims that it is not possible to determine the prevailing party pursuant to Ark. R. Civ. P. 68 until a new trial is conducted.

Arkansas Rule of Civil Procedure 68 provides that an offer of judgment may be made by any party defending a claim at any time more than ten days before trial, which must include costs then accrued. Rule 68 further provides that if the judgment exclusive of interest from the date of offer finally obtained by the offeree is not more favorable than the

24

offer, the offeree must pay the costs incurred after the making of the offer.[29]  For purposes

of this rule, the term "costs" is defined as reasonable litigation expenses, excluding attorney's

fees.[30]  The purpose of Rule 68 is to provide a defendant the means to compel a plaintiff to

consider anew the merit of his or her claim at the time the offer is made and whether

continued litigation is appropriate.[31]  Rule 68 encourages early settlement of claims and

protects the party who is willing to settle from expenses and costs that will subsequently

accrue.[32]  To obtain the protection and benefit of Rule 68, a defendant must make a good-

faith offer or, in other words, an offer sufficient to compel the plaintiff to reassess his or her

case.[33]  This court has stated that Rule 68 has real meaning and, as an example, noted how

the Rule is to be given effect as shown by the fact that it allows the circuit court no discretion

in granting fees when a party meets the requirements of the rule.[34]  Generally speaking, an

award of costs is within the sound discretion of the circuit court; however, when we must

construe a court rule, our review is de novo.[35]  While the decision to award attorney's fees

---

[29]Ark. R. Civ. P. 68.

[30]*Id.*

[31]*Warr v. Williamson*, 359 Ark. 234, 195 S.W.3d 903 (2004).

[32]*Id.*

[33]*Id.*

[34]*Id.*

[35]*Pope v. Overton*, 2011 Ark. 11, 376 S.W.3d 400 (2011).

and the amount awarded are reviewed under an abuse-of-discretion standard, we review factual findings by a circuit court under a clearly erroneous standard of review.[36] In *Marrow v. State Farm Insurance Co.*,[37] we said that a circuit court has a wide latitude of discretion in determining matters related to discovery, and that includes determining the amount of reasonable expenses.

In response to appellee's motion for costs, appellant argued before the circuit court that none of the costs or expenses sought by appellee were recoverable "reasonable litigation expenses" and that appellee did not make a bona fide offer pursuant to Ark. R. Civ. P. 68. Appellant specifically argued that appellee's expert-witness fees and travel-related fees were excessive. As noted above, the circuit court granted appellee's motion for costs, finding that appellee's offer of judgment was a bona fide offer, and appellee's expenses were ordinary and reasonable. In relation to its finding of a bona fide offer, the circuit court stated: "It is noted that none of the medical opinions offered at trial were based on evidence of any injury other than a sprain related to the injury or a ganglion cyst not related to the injury." Appellee argued below that appellant's medical bills following the accident from July 2015 through March 2016 totaled only $5,059.83. We hold that appellee's offer of judgment in the amount of $46,069 complied with the requirements of Rule 68. Appellee's offer clearly exceeded appellant's medical bills of $5,059.83, which appellee conceded were related to the

---

[36]*Calvert v. Est. of Calvert*, 99 Ark. App. 286, 259 S.W.3d 456 (2007).

[37]264 Ark. 227, 570 S.W.2d 607 (1978).

accident, plus costs then accrued. We further hold that appellant failed to adequately develop his argument disputing the reasonableness of the circuit court's award of appellee's costs and fees on appeal. As such, the circuit court did not act improvidently, thoughtlessly, or without due consideration in awarding costs to appellee as mandated by Ark. R. Civ. P. 68.

### D. Motion to Vacate and to Alter or Amend

Appellant notes that his motion to vacate and to alter or amend its order denying appellant's motions to reopen the record, and for new trial and to alter or amend was deemed denied by the circuit court. Appellant incorporates by reference the same arguments as those supporting his contention that the circuit court erred in denying his motion for new trial and to alter and amend and asks this court to reverse the circuit court's deemed denial of his motion to vacate. As noted above, appellant was correct in his argument that the circuit court's August 10 order, as it pertained to the court's denial of his motion for new trial and to alter or amend, was a nullity. For the reasons discussed above, we conclude that the circuit court did not act improvidently, thoughtlessly, or without due consideration in its deemed denial of appellant's motion to vacate and to alter or amend its order denying appellant's motion to reopen the record, and motion for new trial and to alter or amend.

Affirmed.

KLAPPENBACH and HIXSON, JJ., agree.

*Robert S. Tschiemer*, for appellant.

*Smith Williams Law Firm, LLP*, by: *Aylmer Gene Williams*, for appellee.

27