Cite as 2025 Ark. App. 554

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-25-347

|  |  |
|---|---|
| LISA CONAPINSKI | Opinion Delivered November 19, 2025 |
| APPELLANT | |
| | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT |
| V. | [NO. 46JV-24-31] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE BRENT HALTOM, JUDGE |
| APPELLEES | REVERSED AND REMANDED |

**RAYMOND R. ABRAMSON, Judge**

Lisa Conapinski, the mother of Minor Child (MC), appeals the Miller County Circuit Court's permanency-planning order filed March 24, 2025. In the order, the circuit court awarded custody of MC to Randy Allbright, Jr., MC's biological father. Conapinski alleges that the circuit court clearly erred in awarding custody of MC to Allbright. We reverse and remand for further proceedings.

## I. *Background*

The Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect against Conapinski on March 27, 2024, alleging that MC was dependent-neglected as a result of environmental and educational neglect, inadequate food, and inadequate supervision. The petition alleged that it was necessary to remove MC from Conapinski's care in order to protect her health, safety, and physical well-being. The

petition also stated that Allbright had not been involved in MC's life since she was nine months old and that DHS was currently unable to find a current address for him.

The attached affidavit noted that MC, who was twelve years old at the time, ran away from home on March 24, 2024, to escape unsanitary and unfit living conditions. The affiant stated that law enforcement learned that there was no running water inside the home, the home was unclean with a "foul odor," there were "several" pit bulls that lived in the home, and the refrigerator smelt like "spoiled food." When the DHS caseworker inspected the home two days later, she found that MC was not enrolled in school; Conapinski stated that MC was homeschooled but refused to complete her assignments and fell behind. The caseworker explicitly found that the living environment was "deplorable" with large amounts of clutter and trash throughout the living room and kitchen. The house also had a strong odor of dog feces, and there was a large hole in the ceiling and a large hole in the window. Conapinski also noted that she and MC had previously been homeless for several years.

On March 27, 2024, DHS received a second referral regarding the family. At this time, MC informed DHS that she brushed her teeth only once a week, showered only once a week "when they have the resources," and used "sacks" to go to the bathroom in the back yard. MC was noted to have dirty feet and clothing, and she told the nurse that she does not eat a lot, but that is okay "because she's usually not hungry anyway." MC also noted that she gets sores on her feet from not having shoes to wear. Conapinski confirmed that they did not have toileting facilities, and they sometimes used sacks in the backyard.

MC was removed from Conapinski's physical and legal custody on March 27, 2024. The circuit court granted ex parte emergency custody over MC on March 28, 2024, after finding probable cause that emergency conditions necessitated the removal of MC for her safety. The May 8, 2024 probable-cause order found that the emergency conditions that had necessitated removal of MC from her mother continued; MC should stay in DHS custody; and it was contrary to MC's welfare to be returned to her mother.

On June 18, 2024, the circuit court entered an adjudication order following a hearing that occurred on May 15, 2024. In this order, it was determined that Allbright was served via mail on April 15, 2024. The circuit court further held that MC was dependent-neglected. Allbright was found to have contributed to the dependency-neglect because he had no contact with MC for almost 12 years and had failed to provide material support for MC. The goal of the case was set as reunification with a concurrent goal of relative placement, and the circuit court accepted DHS's case plan. The parents were ordered to obtain psychological examinations and safe and stable housing; allow DHS to perform home visits; and cooperate with all recommended services and orders by the court.

On August 7, 2024, Allbright's counsel entered his appearance. The circuit court then held multiple review hearings in which it was determined that Conapinski was not compliant with the DHS case plan and failed to rectify the issues that resulted in MC's removal from her care. Conversely, the circuit court found that Allbright, though still not fit, was compliant with the case plan and all court orders.

On February 5, 2025, the circuit court held a permanency-planning hearing. Judge Brent Haltom, a substitute judge who oversaw the case, had not been present at any previous hearings. He made his determination on the basis of the record before him, the notes by Judge Carlton Jones, and the arguments of counsel.

DHS argued that Conapinski was still not compliant with the case plan, had not obtained proper housing, and had not completed parenting classes. DHS also noted that Conapinski had pending felony drug charges. DHS recommended placement with Allbright, noting that he had been compliant with the case plan, had daily phone visitation with MC, and had extended holiday visitation with MC at his home in Alabama. It was noted that Allbright was employed, lived in Alabama, had stable housing, and had completed the psychological evaluation. The attorney ad litem also recommended placement with Allbright and recommended that visitation between MC and Conapinski be directed by the therapist, who currently recommended against any visitation. The ad litem also noted that MC wanted to live with Allbright. Finally, Allbright's counsel noted that MC stayed with Allbright for two extended visits, one of which was for sixteen days. Additionally, counsel noted that Allbright was in complete compliance with the case plan and had completed everything the court and DHS had asked of him.

No testimony was presented at this hearing, and the court heard arguments only from counsel. At the start of DHS's opening statement, Conapinski objected and requested a continuance so that this hearing could be presided over by Judge Jones. Specifically, she argued that Judge Jones understood the nuances of the case and had been there for all of the

4

hearings and would be in a better position to oversee the permanency-planning hearing. Judge Haltom reiterated that he had Judge Jones's notes from the prior hearings, was well versed in DHS cases, and was able to oversee the hearing set for the day. At no point did Conapinski object to the lack of testimony or other evidence presented at the February 5, 2025 hearing.

At the conclusion of the hearing, Judge Haltom found that Conapinski had not been compliant with the case plan and that Allbright should have full and permanent custody of MC. This appeal followed.

## II. *Standing*

DHS argues that Conapinski lacks standing to bring this appeal. Guidance on standing is provided by three recent cases from our supreme court that cite *In re $3,166,199*, 337 Ark. 74, 987 S.W.2d 663 (1999). In that case, the supreme court reiterated the general rule regarding standing, "that an appellate court cannot act upon an appeal taken by one not a party to the action below." *Id.* at 79, 987 S.W.2d at 666; *Phillipy v. O'Reilly*, 95 Ark. App. 264, 266–67, 236 S.W.3d 548, 550 (2006). It is undisputed that Conapinski was a party to this matter below. Accordingly, Conapinski has standing to bring this appeal.

## III. *Preservation*

For the first time, Conapinski raises the argument that DHS was required to put on testimony and present evidence at the permanency-planning hearing. To preserve an issue for appeal, a party must object at the first opportunity and obtain a ruling from the circuit court. *Stell v. Stell*, 2021 Ark. App. 478, at 2, 638 S.W.3d 855, 857. We will not review a

matter on which the circuit court has not ruled, and the burden of obtaining a ruling is on the movant; matters left unresolved are waived and may not be raised on appeal. *Id.* Accordingly, Conapinski's argument that it is necessary to put on testimony at the permanency-planning hearing is not preserved for appeal, and we do not address it now. *See Dicholkar v. McMillon*, 2024 Ark. App. 155, at 17, 686 S.W.3d 542, 553.

Conversely, while Conapinski raises for the first time her argument that the circuit court erred when it granted Allbright custody of MC, it is preserved. The general rule is this: in a civil bench trial, a party may challenge the sufficiency of the evidence for the first time on appeal. *Bohannon v. Robinson*, 2014 Ark. 458, at 5, 447 S.W.3d 585, 588; *Johnston v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 615, at 10, 534 S.W.3d 200, 206. In *Gyalog v. Arkansas Department of Human Services*, we held that a notice of appeal that designated a permanency-planning order was sufficient to preserve a challenge to the permanency-planning order. 2015 Ark. App. 302, at 8, 461 S.W.3d 734, 739. Like Gyalog, Conapinski has appealed the circuit court's permanency-planning decision and is arguing that that there was insufficient evidence to meet the statutory requirements to place MC with Allbright. She may therefore make her sufficiency arguments concerning the permanency-planning decision for the first time on appeal.

IV. *Merits*

Turning to the merits of Conapinski's sufficiency-based arguments, we review findings in dependency-neglect proceedings de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous. *Lamontagne v. Ark. Dep't of Hum. Servs.*,

2010 Ark. 190, 366 S.W.3d 351. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, considering the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.* This court defers to the circuit court's evaluation of the credibility of witnesses. *Id.*

Arkansas Code Annotated section 9-27-338(a)(1) (Repl. 2020) states that a "permanency planning hearing shall be held to finalize a permanency plan for the juvenile." Subsection (c) states,

> (c) At the permanency planning hearing, based upon the facts of the case, the circuit court shall enter one (1) of the following permanency goals, listed in order of preference, in accordance with the best interest, health, and safety of the juvenile:
>
> (1) Placing custody of the juvenile with a fit parent at the permanency planning hearing;
>
> (2) Returning the juvenile to the guardian or custodian from whom the juvenile was initially removed at the permanency planning hearing;
>
> (3) Authorizing a plan to place custody of the juvenile with a parent, guardian, or custodian only if the court finds that:
>
> > (A)(i) The parent, guardian, or custodian is complying with the established case plan and orders of the court, making significant measurable progress toward achieving the goals established in the case plan and diligently working toward reunification or placement in the home of the parent, guardian, or custodian.
> >
> > (ii) A parent's, guardian's, or custodian's resumption of contact or overtures toward participating in the case plan or following the orders of the court in the months or weeks immediately preceding the permanency planning hearing are insufficient grounds for authorizing a plan to return or be placed in the home as the permanency plan.

(iii) The burden is on the parent, guardian, or custodian to demonstrate genuine, sustainable investment in completing the requirements of the case plan and following the orders of the court in order to authorize a plan to return or be placed in the home as the permanency goal; and

(B) The parent, guardian, or custodian is making significant and measurable progress toward remedying the conditions that:

(i) Caused the juvenile's removal and the juvenile's continued removal from the home; or

(ii) Prohibit placement of the juvenile in the home of a parent; and

(C)(i) Placement of the juvenile in the home of the parent, guardian, or custodian shall occur within a time frame consistent with the juvenile's developmental needs but no later than three (3) months from the date of the permanency planning hearing.

. . . .

(5) Authorizing a plan for adoption with the department's filing a petition for termination of parental rights . . . . [Exceptions not applicable.]

Accordingly, to place MC with Allbright, the circuit court had to find that Allbright was a fit parent. Fitness, in this context, has an imprecise definition. In *Troxel v. Granville*, the Court suggested that a parent is fit if he or she "adequately cares for" the child. 530 U.S. 57, 68 (2000); *see also In re Guardianship of W.L.*, 2015 Ark. 289, at 12, 467 S.W.3d 129, 136.

There are facts in the record that favor a finding that Allbright was a fit parent. It is undisputed that Allbright had been completely compliant with the case plan and the court's orders, that Allbright was having regular communication with MC, and that Allbright had MC for two extended, unsupervised, out-of-state visits. It is further undisputed that MC wanted to stay with Allbright.

8

We hold, however, that the circuit court clearly erred when it determined that Allbright was a fit parent on the basis of the evidence before it. As stated, Judge Haltom was not the judge who had overseen the prior hearings; nor did Judge Haltom have transcripts of these earlier proceedings. Rather, Judge Haltom was limited to the evidence in the record, which mainly consisted of the prior orders in the case. While the record notes that Allbright underwent a psychological evaluation, there is no mention of the results of this evaluation. Likewise, while the prior orders note that Allbright must complete a background check and an Interstate Compact on the Placement of Children home study to have visitation with MC, whether he completed them is unknown, and if he did, the results are also not in the record. Moreover, there is no evidence before this court of Allbright's employment, whether he is financially able to care for MC, or whether he has provided any support for MC during the pendency of the case. Finally, the record is devoid of any information about his home, his current family, or anything else that would support the circuit court's determination that Allbright is a fit parent.

We are particularly concerned with the limited evidence presented in this case. We are cognizant of the need for stability for MC; however, it is the job of the courts to make sure that MC is going to a home that is safer and more stable than the one she was removed from. While Allbright's home may be such a place, we simply cannot say that there was sufficient evidence before the substitute judge to make that determination. Accordingly, we reverse and remand for further findings.

Reversed and remanded.

9

THYER and MURPHY, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.